UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF PENNSYLVANIA


                                    .  Case No. 16-04504-egs
FREEDOM FROM RELIGION               .
FOUNDATION, INC.,                   .
STEPHEN MEHOLIC, DAVID SIMPSON, .
JOHN BERRY, and CANDACE WINKLER,.
                                    .
                Plaintiffs,         .
        vs.                         .  U.S. Courthouse
                                    .  601 Market Street
COUNTY OF LEHIGH,                   .  Philadelphia, PA 19106
                                    .
                Defendant.          .  Tuesday, June 13, 2017
                                    .  9:28 a.m.
. . . . . . . . . . . . . . . .


     TRANSCRIPT OF ORAL ARGUMENT ON MOTION FOR SUMMARY JUDGMENT
             BEFORE THE HONORABLE EDWARD G. SMITH
                UNITED STATES DISTRICT COURT JUDGE


APPEARANCES:

For the Plaintiffs:        Steele Schneider
                           By:  MARCUS B. SCHNEIDER, ESQ.
                           428 Forbes Avenue, Suite 700
                           Pittsburgh, PA 15219
                           (412) 235-7693


For the Defendant:         THOMAS M. CAFFREY, ESQ.
                           5516 Thornberry Court
                           Whitehall, PA 18052
                           (610) 434-4418



Audio Operator:            Jaime Kulick, ESR


TRANSCRIBED BY:            Access Transcripts, LLC
                           10110 Youngwood Lane
                           Fishers, IN 46038
                           (855) 873-2223
                           www.accesstranscripts.com



             Proceedings recorded by electronic sound
       recording, transcript produced by transcription service.

```
 1          THE CLERK:  All rise.  United States District Court
 2   for the Eastern District of Pennsylvania is now in session, the
 3   Honorable Edward G. Smith presiding.
 4          THE COURT:  Good morning, you may be seated.  Thank
 5   you.
 6          MR. CAFFREY:  Morning, Judge.
 7          MR. SCHNEIDER:  Morning, Your Honor.
 8          THE COURT:  The Court is called to order in the
 9   matter of Freedom from Religion Foundation, Inc., Stephen
10   Meholic, David Simpson, John Berry, Candace Winkler v. the
11   County of Lehigh.  This is civil action number 16-4504.  The
12   Court convenes today to hear oral argument with respect to the
13   cross-motions for summary judgment that have been filed by the
14   plaintiffs and the defendant.  Present in the courtroom on
15   behalf of the plaintiffs is actually Marcus Schneider.
16          Good morning, sir.
17          Mr. SCHNEIDER:  Good morning, Your Honor.
18          THE COURT:  And on behalf of the County of Lehigh,
19   Mr. Tom Caffrey.  Good morning.
20          MR. CAFFREY:  Good morning, Judge.
21          THE COURT:  Counsel, I want to remark on how
22   outstanding your written submissions have been, and I do
23   appreciate that.
24          Mr. Schneider, are you prepared to argue?
25          MR. SCHNEIDER:  I am, Your Honor.
```



3

1           THE COURT:  Very well, sir.  You may proceed.

2           MR. SCHNEIDER:  Would you like me at the podium, Your

3   Honor?

4           THE COURT:  Wherever you're most comfortable.

5           MR. SCHNEIDER:  May it please the Court, Mark

6   Schneider on behalf of the plaintiffs, the individual

7   plaintiffs, and Freedom from Religion Foundation.  Your Honor,

8   the parties do not disagree that the Lemon tests and

9   endorsement tests govern the outcome of this case.  The issue

10  presented under the endorsement test is whether a present-day

11  county seal featuring a prominent Latin cross violates the

12  Establishment Clause of the First Amendment.  And if we unpack

13  that very concise issue statement, we really get to the heart

14  of the features of this case, which compel the conclusion that

15  this seal is unconstitutional.

16          And we have to begin, I believe, with the Latin cross

17  itself, which the county itself agrees is a -- is the

18  preeminent symbol of Christianity.  And it is the

19  representation of the crucifixion and resurrection of Jesus

20  Christ at the heart of Christianity and is unique in that it is

21  more singularly religious than some of the other symbols that

22  have been challenged under the Establishment Clause over the

23  years of the Establishment Clause jurisprudence that governs

24  this case.  It's different than the Ten Commandments, which

25  courts have consistently remarked has some secular history in

1 our country.  It's different than a crèche in a holiday

2 display, which has obvious holiday significance.  It's

3 different than the sort of ceremonial deism uses of the word

4 "god" that we have seen before the Supreme Court.  It is

5 singularly religious, and it has not been susceptible to

6 secularization in the way that those other symbols have.

7          And so to return to that concise issue statement, a

8 prominent Latin cross on a county seal, we also have to talk

9 about the prominence of the cross in this seal.  It is

10 centrally located in the seal.  It is the largest symbol on the

11 seal.  And in the original design, the design which is still

12 used -- the color scheme, anyway, is still used on the flag of

13 the county today.  It's a blazing canary yellow standing out

14 among all the other symbols at the center of the seal itself.

15 And so that prominence, in conjunction with the singularly

16 religious meaning of the cross, make this case very unique in

17 comparison with other cases that the Third Circuit has heard.

18          And the final piece in sort of unpacking that concise

19 issue statement of a prominence Latin cross on a county seal is

20 the county seal aspect of this case, which was perhaps the most

21 striking difference in the briefs submitted by the parties.

22 From the plaintiffs' standpoint, the fact that this is on a

23 county seal makes it quite different from cases involving a

24 singular monument standing for decades in the same place, or

25 the plaque at issue in the Freethought Society case heavily



ACCESS TRANSCRIPTS, LLC          1-855-USE-ACCESS (873-2223)

1  relied upon by the defendants.  This is the symbol of the local

2  government, and it has been used as that symbol and is still

3  being used as that symbol today.  So there's no disconnect.

4  There can be no implied distance between whatever meaning the

5  Court determines this seal has to the reasonable observer and

6  the government itself, the local government itself.

7       THE COURT:  And why do you think -- if you were to

8  poll the residents of Lehigh County, why do you think almost

9  none of them would know what was on their seal when it's so

10 prominently displayed?  It's on, I guess, on government

11 vehicles, police cars, on flags.  Why would it be that so few

12 residents would have any idea what was on their seal?

13      MR. SCHNEIDER:  Well, Your Honor, I guess I don't

14 know that it's necessarily the case on the record in this case

15 that it isn't well known in the community.  But I know that --

16 and frankly, my interactions have been limited to the

17 individual plaintiffs.  And I know, you know, for them, it has

18 been quite prominent, and, you know, I think that one of the

19 plaintiffs remarked that he had just seen it on a t-shirt at a

20 store down the street on the day of his deposition.  So, you

21 know, for individuals who feel that this is an important issue,

22 I think it's quite prominent, and I think --

23      THE COURT:  That's from 1944 to today.  Are you aware

24 of any other issues that have come up with respect to the seal

25 before this case?

1          MR. SCHNEIDER:  The record does not reveal that there

2   have been any other issues.  The designee, the opponent for the

3   county, was able to remark that certainly during his time,

4   nothing had come up and that he was unaware of anything prior.

5   But obviously we are dealing with a large amount of time.  But

6   you know, I don't -- certainly, as plaintiffs with the burden

7   in this case, we have not uncovered evidence that there has

8   been prior controversy here.  But I think it's important to

9   note that -- and this gets at one of the defendant's argument

10  -- that the Third Circuit has specifically rejected the idea

11  that passage of time alone has a sanitizing effect on --

12          THE COURT:  Right.

13          MR. SCHNEIDER:  -- otherwise religious displays.  And

14  I think -- and that stems from Justice O'Connor's opinion in

15  Lynch v. Allegheny, and recognizing the sort of trouble that we

16  might find ourselves in if history -- if passage of time alone

17  were sufficient to secularize otherwise religious symbols or,

18  as an example, sanitize, perhaps, discriminatory symbols over

19  the years, any other effect like that.

20          So the passage of time here I think is merely one

21  piece to the puzzle.  And I guess when you take a display that

22  features that prominent Latin cross on such an identifiable

23  government symbol, we take the position that the County has a

24  real uphill battle in -- and the County's correct in observing,

25  and I think we also observed that the reasonable observer

considers this display with the history and context of the

display in mind.  But I believe that facially, with such a

prominent, singularly religious symbol on a county seal, the

County has an uphill battle to show that the history and

context somehow secularizes --

THE COURT:  So you would agree that the analysis is

somewhat different if we have a flag that was designed and

created or a seal that was designed and created in 1944 versus

if Lehigh County were trying to do this today.

MR. SCHNEIDER:  I think it's safe to say that it is

more complicated because it presents the opportunity for  being

different.

THE COURT:  And otherwise, if it were being done

right now, your case would be extremely strong, if it isn't

already strong.  But if, right now, you're protesting or

objecting to the County passing a seal that has this huge cross

in 2017, that would be an incredibly uphill battle for the

County.

MR. SCHNEIDER:  I think so, and I think that the

primary difference would -- and I guess what I want to avoid is

I don't know that we're dealing with a situation that much

different than that because I don't know that the 70 years has

supplied a lot of context that would change the meaning.  So

it's certainly the case that, without there being any

possibility of history and context to change the meaning of the

1  cross, it would be stronger in that sense.  But I want to be

2  careful to say that I don't think the 70 years that has passed

3  here has really supplied much in the way of context that would

4  change the meaning, as if it were adopted today.  And I think

5  that other than the passage of time, we really don't -- there's

6  really no evidence pointed to by the County to show any clearly

7  identifiable secular meaning that the seal or the cross has

8  come to possess over time.

9         THE COURT:  Now, what about effect?  There was

10 nothing in the record, really, to focus on effect.  One of our

11 concerns, of course, under the First Amendment is that there be

12 no establishment of religion by the government.  Is there any

13 evidence that, from 1944 to now, that this seal has in fact

14 helped to establish, preserve, and in any way assist the

15 Christian religion over any other religion?  Do we have more --

16 a higher percentage of Christians today in Lehigh County than

17 we had in 1944?  Anything about effect?  Do you think that has

18 any purpose to this analysis?

19        MR. SCHNEIDER:  I don't think that there -- we've

20 uncovered any outward effects.  Certainly, I think what's hard

21 to capture is one of the plaintiffs, Mr. Simpson, testified

22 that he has just sort of a general uneasiness about the

23 possibility that he, as an atheist, may need to call upon the

24 government, and if it's known that he doesn't subscribe to the

25 Christian religion, he may face consequences.  And so to the

1 extent that that may have had a chilling effect on any number

2 of individuals over the years, I don't think there would be

3 outward evidence of that.

4          THE COURT:  That raises even another question.  Is

5 there any reason to believe there are more Christians in the

6 government today than there were in 1944 or that somehow this

7 -- the government has been unduly biased in favor of religion

8 -- in favor of Christianity because of the seal or that, in

9 fact, the seal results from this bias?

10          MR. SCHNEIDER:  Certainly not in the record, Your

11 Honor.  I know Mr. Meholic provided testimony in his deposition

12 that one of the things he did when -- he actually brought this

13 matter to the County's attention prior to the involvement from

14 the Freedom from Religion Foundation, and for him, some of his

15 research that led him to do that was the recent census and the

16 information contained that reflected that Christians were not a

17 significant majority in the county.  And he felt that to the

18 extent that at one time the symbol may have represented a

19 majority of the county, that that's certainly no longer the

20 case.

21          THE COURT:  Now, wouldn't that have really been

22 something for a legislative decision as opposed to a judicial

23 decision?  If, in fact, the people of Lehigh County no longer

24 like the cross on their seal because they're no longer

25 Christian, couldn't they just do that through the elective



1  process and through their legislature?

2        MR. SCHNEIDER:  Sure, sure.  I think that they could.

3  But I don't think that that encroaches upon the individual

4  rights of these particular plaintiffs from seeking to have a

5  symbol that they find to be, you know, offensive and harmful to

6  them in an important spiritual way that the courts have

7  consistently recognized.  I don't think it offends their

8  ability to be able to seek relief on that basis on an

9  individual claim.  And I guess the other feature that I haven't

10 yet talked about regarding the history and context that is

11 important to note is that the statements of the creator of this

12 seal disclosed that, unsurprisingly, the cross was used to

13 signify Christianity and, I believe, the -- what he phrased as

14 the people who represent the backbone of Lehigh County.

15       THE COURT:  Right.

16       MR. SCHNEIDER:  And so if the County has an uphill

17 battle and the first bit of history that we find supports that

18 the original creator of this display, who was one of the three

19 commissioners to vote to approve the display, specifically used

20 the cross to signify Christianity, I think it makes that,

21 again, an even steeper hill to climb.  And if -- we've talked a

22 little bit about the passage of time and how that alone is not

23 enough.  Really, the only other argument presented by the

24 County is that these other symbols on the seal have somehow had

25 secularizing effect upon the cross itself.  And I think there

1  are a few problems with that argument, the first of which is

2  it's actually contrary to the statements of the creator of the

3  seal.  So to the extent that the other symbols he put on the

4  seal would change his desired purpose for the cross being on

5  the seal, it would be unintended and accidental, if that were

6  to happen.  And the other important feature is that there's no

7  evidence to suggest that -- what the secular meaning is that

8  the cross may have acquired over the years, what effect these

9  other symbols may have had upon the cross.  Certainly --

10         THE COURT:  But do you think the average -- and I

11  agree with you in what you said before about the symbol, and I

12  do want to talk to you a little bit more about that -- but this

13  is a unique symbol of Christianity.  It is known worldwide.

14  Everybody knows it's kind of like the red cross on an emergency

15  vehicle or helicopter.  It's known worldwide, and everybody

16  knows what that stands for.  They know it stands for

17  Christianity.

18         Now, what that means to them, you know, obviously,

19  that can be different depending on the views of various people.

20  But even though it is that symbol, the symbol is subject to the

21  interpretation of individual people.  Things like the nativity

22  scene or the Ten Commandments, those are actual words, or even

23  "In God we trust."  Now "In God we trust" less so, but those

24  are actual things from the Bible, and you kind of crossed over

25  and said this stands as much worse from a constitutional

ACCESS TRANSCRIPTS, LLC          1-855-USE-ACCESS (873-2223)

12

standpoint because it's such an almost simple symbol.  It is
just a symbol, and that symbol has such meaning.  But does that
symbol have more meaning than the Ten Commandments when it's
just a symbol or does that symbol have more meaning than a
nativity scene, which is about the birth of Christ, and there's
no way you can argue it's not about the birth of Christ.

MR. SCHNEIDER:  Uh-huh.

THE COURT:  How do you -- why do you make that
determination that you believe this symbol, standing alone with
no words, et cetera, which I concede is known worldwide, almost
nobody you will run into, at least as an adult, will not know
what that symbol stands for.

MR. SCHNEIDER:  Well, I think -- I would agree that
it is more abstract in its meaning, and it's less specific than
the Ten Commandments, it's less specific than a nativity scene.
However, it does not have any secondary secular meaning in the
way that those symbols might.

The Ten Commandments, courts have consistently
recognized a secular role in the creation of laws in our
country.  And the crèche, or the nativity scene, has a holiday
significance, a secular holiday significance, that -- and it's
important to note on that symbol that that is one symbol where
the full context has been very important.  A standalone
nativity scene may be problematic whereas a display in
conjunction with many other holiday symbols would suggest

perhaps a more secular holiday purpose.

But with respect to the cross, there is no secondary secular meaning that has been routinely identified by the courts in the way that there have with these other symbols, and frankly, there's no -- at least that I can see -- there's no secondary secular meaning pointed to by the county.  I don't know what the symbol is to stand for other than Christianity.

And so while it is not as specific a part of Christianity, perhaps, as the Ten Commandments and the words written in the Ten Commandments, it's certainly a symbol of the religion itself, and I think fairly safe to say it's a symbol of the crucifixion and resurrection of Jesus.  And so those components of that religion have not -- there's no secondary secular meaning I think is important.

And I guess the other feature of this case that contrasts the symbol with those other contexts is, again, that this is on the seal in numerous places, and in many of the contexts displayed year-round, where the seasonal displays in holiday cases have been significant in the fact that the displays have been seasonal.  And in a lot of Ten Commandments cases, in a singular location, you've seen sort of historical landmark type of argument.  And this really doesn't have those features because it's still being placed in new locations today.

And so I guess the other issue that I wanted to touch



1   on is to the extent that there's a claim that the secular

2   meaning acquired is to honor the settlers of the county, to the

3   extent that that's a contention being made, there's really no

4   evidence to support that.  I mean, that may well be the modern

5   reading of the words of Mr. Hertzog that designed the seal by

6   the commissioners today.  It's not supported by those words.

7          I'm not saying they can't read it in that way, but

8   there is really a lack of evidence to support that meaning.

9   And I think what's significant is there's also a lack of

10  evidence to suggest that the settlers were Christian, that a

11  cross would fairly represent those settlers, that there is not

12  another symbol to represent the settlers of the county that's

13  not such a blatantly religious symbol.  There's really nothing

14  about the cross itself that connects with settlers of the

15  county.  It's just the symbol of Christianity.  And so to the

16  extent that some point, over time, it has acquired a secondary

17  meaning, I struggle to see how the evidence supports that

18  contention.

19          THE COURT:  Well, but you don't believe that they've

20  maintained this cross in order to maintain that Christianity is

21  the religion of Lehigh County.

22          MR. SCHNEIDER:  Well --

23          THE COURT:  Is there anything in the record to

24  suggest that today's commissioners believe Christianity is the

25  religion of Lehigh County?



ACCESS TRANSCRIPTS, LLC          1-855-USE-ACCESS (873-2223)

1          MR. SCHNEIDER:  I think the problem is the record is
2    really devoid of support for the stated position of the County.
3    I mean, the county has, in many respects, legitimized the
4    importance and the meaning of Mr. Hertzog's comments by saying,
5    that's what we look to to say, you know, what does this mean.
6    And the County's argument seems to be that because they
7    interpreted it to have a secular meaning, the vote to keep the
8    seal necessarily has a secular meaning, as well.

9          But the problem with reading Mr. Hertzog's words to
10   suggest that the cross is there for a secular purpose is that
11   it essentially requires accepting his statements on 14 or 15
12   symbols and rejecting just one, which happens to be at the
13   heart of this litigation.  And so, you know, I think that --
14   the Court's question is precisely why, in McCreary County, the
15   Supreme Court reemphasized that even the purpose analysis is an
16   objective one, where a reasonable observer or an objective
17   observer considers all the circumstances and asks --

18         THE COURT:  But hasn't the Third Circuit more or less
19   interpreted that more as a subjective standard?

20         MR. SCHNEIDER:  Well, Your Honor, Freethought Society
21   and Modrovich are the cases that kind of delved into that, and
22   both of those cases occurred prior to McCreary County, which
23   was a 2005 case before the Supreme Court.  And so to the extent
24   that they nod in that direction, I think that McCreary has --
25   should be read to have the effect of kind of resetting that

1  analysis towards a more objective view.  And it's certainly an

2  objective view of the subjective statements of the county.

3          THE COURT:  Now, what if the subjective statements of

4  the county today are, we didn't want to change the seal because

5  it is our historical seal, put into place in 1944.  I suppose

6  your suggestion would be that it was unconstitutional in 1944.

7  Is that correct?

8          MR. SCHNEIDER:  Correct.

9          THE COURT:  As opposed to the law has evolved, that

10 morality has evolved, the Constitution has evolved, and the

11 interpretation of it.  But it's your position it was

12 unconstitutional in 1944.  But suppose today the people that

13 are voting on keeping it are saying, we're keeping it because

14 it's our historical seal, it represents our history, it was put

15 into place in 1944, it's been the flag, it's been the seal for

16 the people of Lehigh County and the citizens from 1944 to 2017,

17 that's why we kept it in place.  How would you respond to that?

18         MR. SCHNEIDER:  Well, I think that that really boils

19 down to being nothing more than a passage of time argument from

20 a legal standpoint.

21         THE COURT:  Right.

22         MR. SCHNEIDER:  I mean, and the commissioners aren't

23 attorneys, and they're not looking at it in the way that we are

24 here.  But, you know, to the extent that it's preserving

25 something that has just been around for a long time -- and it

1  has -- I mean, that can't be disputed.  I think that amounts,

2  legally, to nothing more than suggesting that somehow it's

3  grandfathered in because it's been around for a long time.  And

4  I think it would be different if, in conjunction with making

5  that claim, the county could point to some secular meaning.

6  And in our briefs we made a point to cover the seal cases in

7  the Tenth and Seventh Circuit that found seals containing a

8  cross to be permissible.

9        There are two of them, and they have very unique

10 histories, very unique facts surrounding a secular meaning to

11 the seal in those situations, one being a family crest, and the

12 other being sort of a part of the naming of the city itself.

13 And so I think the contention that this is part of our history

14 would be different if there were some facts to suggest that

15 Christianity has some unique place in the history of Lehigh

16 County.  And we really don't have that.  So absent that, what

17 you're left with is even if you stripped away the Christian

18 meaning of the cross, the cross has to represent religion.

19        And the problem with maintaining this from a

20 historical standpoint is it places religion among the other

21 important features and aspects of the county to be celebrated

22 in this seal.  And so even if you avoid the sectarian issues

23 of, you know, promoting Christianity versus other religions,

24 what about the individuals, like some of the plaintiffs, who

25 are non-religious?  Just very simply at a very broad level are

1 non-religious, living in a county where religion is celebrated,

2 even if at that general a level.

3       THE COURT:  But what they can't get around is that

4 this seal has, or was, is part of the history of the county

5 they're living in.  It's been there since 1944.  So I could see

6 being concerned about something being done today, and you could

7 argue what's being done today is the continuation of that seal.

8 But there's no way, whether you're an atheist, whether you're

9 religious, whether you're a Jew, whatever you are, you can't

10 get around the fact that, in 1944, this is what the

11 commissioners voted as the seal, and that is now the history of

12 Lehigh County, includes having this seal since 1944.

13       MR. SCHNEIDER:  And again, I think what that comes

14 down to from a legal standpoint is the inability of just the

15 passage of time to secularize that.

16       THE COURT:  Right.

17       MR. SCHNEIDER:  And I guess just as a final note on

18 that topic, the --

19       THE COURT:  How is "In God We Trust" secularized?

20       MR. SCHNEIDER:  Well, the reasoning of the court is

21 that it has taken on a meaning of legitimizing currency and

22 that it has performed the important role of showing that

23 particular currency is --

24       THE COURT:  Well, wouldn't the plaintiffs be even

25 more upset by the fact that every time they pull out a currency

19

1   of the United States, the word "God" is right there and that

2   not just the word "God," but we trust God?

3            MR. SCHNEIDER:  I think if they were here, Your

4   Honor, I think they probably would.  I think they probably

5   would, and you know, that ground has sort of been covered, and

6   that's not a challenge that's right for them to take on, given

7   how that's been decided.  But I think in this particular

8   situation on the local government level, there can really be no

9   greater symbol of that local government than the county seal,

10  which is, again, as we've talked about, still being used today.

11           And so each new use is somewhat unique from -- in

12  terms of distinguishing and separating this case from

13  longstanding singular displays.  And so from the standpoint of

14  the individual plaintiffs, each time that the seal is used

15  today, it really is carrying that originally intended message

16  from the original creator of the seal.  And so from their

17  perspective, and we think from the perspective of a reasonable

18  observer, the passage of time alone hasn't changed that.

19           THE COURT:  Okay.

20           MR. SCHNEIDER:  Thank you, Your Honor.

21           THE COURT:  Thank you very much, sir.

22           And Mr. Caffrey, you would agree that the seal is

23  large, prominent, and over the courthouse?

24           MR. CAFFREY:  Judge, in one of the cases, the court

25  describes the Latin cross as an inherently religious symbol,



1  and it notes that we're the masters of the obvious.  Of course
2  it's an inherently religious symbol, and the county certainly
3  does not dispute that.  The county does not dispute that the
4  cross is canary yellow and with a blue background -- at least
5  for purposes of the flag.  The seal in other aspects does not
6  appear in the same type of display.

7          Now, Judge, I'll start out my presentation with
8  something which you noted in response to Mr. Schneider's
9  presentation, and that is if the county, in 2017, decided to
10 adopt a new seal that looked like the seal that was adopted in
11 1944, I think there would be little question that that seal
12 would be unconstitutional because it would be readily apparent
13 that the purpose of adopting this type of seal within the
14 context of this day and age would be solely for the purpose of
15 advancing religion.  And I think that's an important principle
16 to focus on because what the Third Circuit made clear in
17 Freethought and Modrovich was that although the court needs to
18 look at the purpose why a religious symbol was initially
19 adopted or approved, the focus should be on why a government
20 entity is now refusing to remove that religious symbol upon
21 request of an interested citizen.

22         So if we go back to 1944, when this seal was
23 originally adopted, there's nothing in the official minutes
24 which indicate why the seal included a Latin cross.  However,
25 we do know that an article was written about two years later by

1 one of the commissioners who approved that seal and, by all

2 means that we know, was the person who actually designed the

3 seal.  That's what the article indicates.  I have no reason to

4 dispute that.  And Mr. Hertzog, the commissioner that I'm

5 referring to, writes the article for the Lehigh County

6 Historical Society, and he indicates quite clearly that the

7 purpose of the cross was to honor Christianity.

8           We have no reason to refute what Mr. Hertzog wrote in

9 1946.  And I think perhaps that plaintiffs have misinterpreted

10 what the County has said in 2015.  I believe the plaintiffs are

11 arguing that, in 2015, the board of commissioners attempted to

12 reinterpret or re-characterize what Mr. Hertzog said in 1946,

13 and I don't interpret what the board of commissioners stated in

14 2015 in that way.  And in fact that's why I submitted an

15 affidavit for Mr. Osborne in an attempt to clarify the record.

16           And I think what Mr. Osborne indicates in that

17 affidavit is reflective of what the board of commissioners did

18 in 2015, and that is not that they said, Mr. Hertzog, we know

19 that you said that the Latin cross signifies Christianity, but

20 we're going to re-characterize what you said.  The language in

21 that article speaks for itself.  It appears that that cross was

22 put on the seal for the purpose of honoring Christianity.  I'm

23 not here to dispute that.  I'm not here to re-characterize what

24 Mr. Hertzog said in 1946.  And if your focus today in

25 evaluating this case was solely on what happened in 1944, well,

22

1   the county would be hard-pressed to defend itself.

2          But I think, again as the Third Circuit noted, the

3   focus is on, well, why did the commissioners refuse to remove

4   that seal when it was challenged as being unconstitutional?

5   And I think Mr. Osborne's affidavit clarifies, clearly, why the

6   board of commissioners refused to remove that seal.  They

7   looked at the only information that was available at the time

8   and is still the only information available, and that is,

9   again, the article written by Mr. Hertzog.

10          Mr. Hertzog's article of course not only mentions the

11  cross, it mentions, at my count, 15 other symbols on that seal.

12  The industrial buildings, the farm buildings, the cow, the

13  bunting, signifying clothing manufacturing in Lehigh County --

14  all of those clearly secular symbols on the seal must be looked

15  at in conjunction with the cross.  And I think what the board

16  of commissioners decided in 2015 is that we know what

17  Mr. Hertzog said in 1946, but we don't, at this point in time,

18  in 2015, see that cross, or at least the inclusion of the cross

19  on the seal, as an endorsement of Christianity.  But at this

20  point in time, after the passage of 71 years, we see that cross

21  as signifying just a part of the history of Lehigh County, just

22  as the other symbols alongside it clearly symbolize the history

23  of Lehigh County.

24          Now, that is -- there are two tests, of course, and I

25  think Mr. Schneider is correct -- there's no dispute --



1            THE COURT:  So if there were no more farms in Lehigh

2   County --

3            MR. CAFFREY:  Yes.

4            THE COURT:  -- everything's gone industrialized, and

5   the county commissioners decided leave on the farms on the seal

6   as a representation of the history of the county, that's

7   somewhat similar to what you're suggesting they did with

8   respect to the cross.  And it was challenged, said this was the

9   history of the county being represented on the seal, and the

10  history of the county included Christianity.

11           MR. CAFFREY:  The history of the county included the

12  settlers of Lehigh County, who were Christian.  That's the

13  historical reference to the cross.  So, yes, farming is a part

14  of Lehigh County history, clothing manufacturing is a part of

15  Lehigh County history, the Liberty Bell having been hidden in

16  the Zion Church in Allentown is a part of Lehigh County

17  history.  And I think, as is made clear in the Lynch case,

18  which is the nativity scene, that you can view an inherently

19  religious symbol along with other secular symbols in terms of

20  deciding the constitutionality of that particular display.

21           And in the Lynch case, which is not on all fours with

22  what we have here, Judge, but I think the principle is

23  applicable, and that is does the inclusion of clearly secular

24  symbols, along with an inherently religious symbol, perhaps

25  change the way that the reasonable person would look at that

display.  So in the <u>Lynch</u> case, if you had only the nativity

scene, obviously it would be seen as clearly a religious

display.  However, you include other secular symbols, the

person who views that display perhaps begins to look at it as

having a secular purpose and not simply a religious purpose.

And that, I think, is why it's applicable to an evaluation of

the county seal.

Now, Mr. Schneider indicated that the county and the

plaintiffs are essentially in agreement that the test to be

looked at, or the endorsement test -- or I should say the <u>Lemon</u>

test, as modified by the endorsement test -- with respect to

the endorsement test, it focuses, as you know, on how the

reasonable observer would perceive that religious display.

And, yes, a big part of the county's argument is that after 71

years, the reasonable observer would begin to see that cross

not simply as a religious symbol but as part of the history of

Lehigh County.  But it's not just the passage of time.  I think

it's also important to note that there's been no efforts by the

Lehigh County to point out to the public that there's a cross

on the flag.  There's been no effort to celebrate the cross.

Now, while the seal is, in fact, as noted by

Mr. Schneider in many cases, in many locations in Lehigh

County, it's on the flag, it's on government buildings, it's on

letterhead and things of that nature, there's been no official

action taken to bring attention to the seal or to the cross on

1  the seal.  So I think that's -- that was a big part of the

2  court's decision in <u>Freethought</u> as to why the Ten Commandments

3  would, after a period of 80 years, begin to take on a secular

4  purpose, at least in the mind of the reasonable observer.

5          Do you have any questions, Judge?

6          THE COURT:  Yes, I do.

7          MR. CAFFREY:  I thought you would.

8          THE COURT:  It's really a question of the -- aren't

9  those symbols also part of the current value of the county, not

10  only history.  Like isn't today's seal -- education, farming,

11  industry -- aren't all those part of the current values of the

12  county?

13          MR. CAFFREY:  I believe you could say that, yes.  I

14  don't believe that changes our argument, though, that they can

15  also be valued for their historical significance in the county

16  as well.  Although some could argue that the industrial

17  buildings are hard to find --

18          THE COURT:  Old?  Or that there's --

19          MR. CAFFREY:  -- at this point in time.

20          THE COURT:  -- a lot of pollution coming out of

21  there.

22          MR. CAFFREY:  Right.  But I don't -- yes, those

23  elements are certainly present all the way down to the bison,

24  which is at the Lehigh County Game Preserve.  But I don't think

25  that necessarily reflects -- changes the substance of my

26

1  argument.

2          THE COURT:  Has there ever been any change to the

3  seal since 1944?

4          MR. CAFFREY:  There's been no official changes to the

5  seal, but I can tell you Mr. Schneider went through different

6  versions of the seal with Mr. Osborne at his deposition, and

7  unofficially, there have been slight changes to the seal.  The

8  reason for that is lost to history.  I can tell you this,

9  though.  If you look at the county website, where you see the

10 county seal very small at the top of the website, it obviously

11 will look different than it does on the county flag with the

12 blue background.  It was changed in digital form for display

13 purposes that I can't explain.  But there's been no official

14 changes to the seal.  Slightly different variations to fit the

15 circumstance.

16         THE COURT:  And I can't help but think that in 1944,

17 we're in the midst of World War II.  Americans are dying in

18 large numbers, cemeteries being marked by crosses.  It was a

19 unique time, I would think, for anybody that is in the process

20 of developing a seal, et cetera.  I don't know if it would have

21 been different if it was before the war started or after the

22 war was over, but it was certainly a very unique time in

23 American history to be designing a seal to reflect the county.

24 But wouldn't you say that's part of the problem here, is this

25 seal today, in 2017, reflects the values of the county, and one

1   of them appears to be Christianity as a value of the community.

2          MR. CAFFREY:  Well, I think that goes back to what I

3   said earlier, in that, look, we can't escape the fact that we

4   have a Latin cross on the seal.  It's an inherently religious

5   symbol.  Nothing that anyone is going to do is going to change

6   that.  The question is, number one, how does a reasonable

7   observer look at that, knowing the age and history of the seal.

8   That's the endorsement test.  And number two, what secular

9   purpose does the county have for refusing to remove that cross?

10  That's the purpose prong of the <u>Lemon</u> test.  And again, even

11  though it's an inherently religious symbol, I think what the

12  record evidence discloses is that the County's reason for

13  refusing to remove that inherently religious symbol is not for

14  the purpose of endorsing religion.

15          THE COURT:  Does it matter that, in 1944, the

16  reasonable observer looking at that cross would believe that

17  that cross was to represent Christianity because that's a value

18  of our community?  In 2017, the importance of religion has

19  greatly diminished for many, many Lehigh County residents.  And

20  the education of the average citizen as to what the government

21  can do and can't do as it relates to endorsing religion is

22  great.  And most, if not all, people in Lehigh County know that

23  Lehigh County cannot endorse a religion.  And if they know that

24  Lehigh County cannot endorse a religion, and the importance of

25  religion has diminished to such a degree, does that change what

28

1   the reasonable observer -- who the reasonable observer is in
2   2017 and what they would take from that cross being on the
3   seal?

4          MR. CAFFREY:  I think it has to.  I think the
5   reasonable person in 1944 is very different from the reasonable
6   person in 2015, when they refused to remove the seal.  I don't
7   think there's any question about that.  As you noted, I think
8   the reasonable person -- I think any person in 1944 who saw the
9   cross and who read Mr. Hertzog's article would understand that
10  they put the cross on the seal to honor Christianity, exactly
11  what's stated in the article.

12         THE COURT:  Now, suppose at the opening of the
13  commissioners' meeting they decided to have an opening prayer.
14  Can they do it?

15         MR. CAFFREY:  Well, we haven't received that
16  challenge yet, Judge, so I'm not quite prepared to argue that.
17  That's a little bit of a different analysis.

18         THE COURT:  It's generally been accepted as being
19  permitted, and I'm sure Mr. Schneider would comment on that if
20  that's not precisely true.  And I know that's not the focus
21  here, but there, you're actually calling out to God in a very
22  real way, and if that is constitutional, then it makes the
23  analysis of the seal a little different, where it's just a
24  passive symbol.  Some would argue a passive symbol can be more
25  powerful than an act of prayer before the commissioners'

1   meeting or before the opening of the United States Congress.

2   But it demonstrates the difficulty in trying to apply these

3   principles to different things that have become part of the

4   history of this country, while at the same time not offending

5   the different groups that now exist, and existed then,

6   arguably.

7           MR. CAFFREY:  Well, certainly, Judge, as you know,

8   this is not something I do on a daily basis.  I deal with the

9   civil rights actions based upon law enforcement activities.

10  That's why I was here a few weeks ago.  So when I looked at

11  these cases, it's a very interesting analysis.  The Lemon test

12  has been criticized for 25, 30 years, but the Supreme Court

13  certainly hasn't seen fit to overrule it, choosing instead to

14  use the endorsement test, but still holding onto the secular

15  purpose prong of the Lemon test.  And they give the district

16  courts a framework to work within, but each case, of course,

17  has its own set of facts unique to that particular case, which

18  is what we have here.

19          We don't have a lot of information, frankly, and it's

20  probably not all that different than seals or Ten Commandment

21  cases that have been around for decades.  Probably in those

22  cases, there's not a lot of information either.  But we do have

23  a lot of information on why the board of commissioners took the

24  action that it took in 2015, and again, I think that has to be

25  the focus of your attention here.



1          I'm not going to try to dispute what happened in

2   1944.  I think that would be foolish, given the inherent

3   religious nature of the cross and given what Mr. Hertzog said

4   in his article.  And again, if that was the sole focus of your

5   attention, Judge, then we'd probably lose this case hands-down.

6   But it should not be the focus of your attention.

7          THE COURT:  Okay.  Thank you very much, sir.

8          MR. CAFFREY:  Okay.  Thank you, Judge.

9          THE COURT:  And Mr. Schneider, what do you think

10  about that idea of can the commissioners have an opening

11  prayer?

12         MR. SCHNEIDER:  Your Honor, I wish I were more able

13  to comment on that.  I know --

14         THE COURT:  Well, we know in the U.S. House of

15  Representatives, they do, and in the Senate, they do.

16         MR. SCHNEIDER:  Yes, and I know legislative prayer,

17  often different than prayer in other settings, like in a school

18  setting.  Indian River, in the Third Circuit, dealt with prayer

19  in a school setting, and I think that's somewhat different.

20  And personally, I haven't encountered a legislative prayer

21  situation, Your Honor, to really be able to comment on that.

22  But I certainly acknowledge that the courts have treated

23  legislative prayer in a different way.  I think given the long

24  history of the presence of some sort of wanting to present

25  legislative sessions as a solemn event and, you know, making

1  some expression in that regard, that it has been treated

2  differently.

3          THE COURT:  Okay.  And what about the reasonable

4  observer today versus the reasonable observer in 1944?

5  Americans know that the government cannot endorse a religion.

6  It certainly can't establish a religion or course.  It can't

7  even endorse one religion over another.  Now, that's the

8  mind-set of the reasonable observer today.  Does that

9  reasonable observer look at the flag and say, that cross has to

10 go because Lehigh County is endorsing religion, or does the

11 reasonable observer now look at that and recognize that's just

12 a historical -- something left over from an earlier time?  Does

13 it affect how we interpret the reasonable observer, the

14 objective standard?

15         MR. SCHNEIDER:  I think I would agree with

16 Mr. Caffrey that it does, Your Honor.  I mean, I do think that

17 there is likely a difference between a reasonable observer

18 today and a reasonable observer in 1944.  Specifically what

19 those differences are, in terms of what the reasonable observer

20 brings to the table before considering these specific facts, I

21 think it would be probably a greater knowledge of, you know,

22 the meaning of the Establishment Clause and the Separation

23 Clause and -- but I think at the end of the day the most

24 important function of the reasonable observer is the

25 consideration of these facts through a lens of today, through a

1  lens of this time.  And, you know, I think the lack of

2  evidence, the lack of a record to add any sort of clarifying

3  information about the meaning of the seal, given the overt

4  nature of the presence of such a singularly religious symbol, I

5  think actually hurts the county's position here because it

6  gives less color for the reasonable observer to change what

7  would be the most readily understood meaning of the cross and

8  the seal.  And so I think that that is probably more a

9  hindrance than a help in this situation because of how clearly

10 symbolic of Christianity the seal is.

11          THE COURT:  And plus, you could obviously argue that

12 it is cases such as this that raise the level of information to

13 the average American as to what a government can do and can't

14 do as it relates to endorsement of religion.

15          MR. SCHNEIDER:  Certainly.  And Freedom from Religion

16 Foundation would be happy to hear Your Honor make that remark

17 in the sense of acknowledging the importance of, you know, the

18 defense of the First Amendment and, in situations like this, to

19 raise that sort of awareness, you know, in an effort to really

20 help teach the public about the meaning of the living and

21 breathing Constitution, and how it can handle situations like

22 this over a span of 200 years and adapt to the situations of

23 today as it did then.

24          THE COURT:  Mr. Caffrey.

25          MR. CAFFREY:  Let me just say in response to that,



1 Judge, first of all, the reasonable observer, I've always been

2 fascinated by that concept of the reasonable man.  If you go

3 back to "Prosser on Torts" in the first year in law school,

4 there was a -- I specifically remember a note explaining what

5 the reasonable man was.  He's the man who goes home after work

6 and cuts the lawn in his short sleeves.  I never really

7 understood what Prosser meant by that, but I do remember that

8 note.

9        In terms of deciding what the reasonable observer

10 would see here -- and I don't mean to be repetitive -- but what

11 we do know from the case law is that the reasonable observer

12 knows the age, knows the history, and knows the context of the

13 challenged display, and here, that reasonable observer would

14 know that that seal has been around for 71 years, at least as

15 far as 2015 is concerned.  It's been around for 71 years.  No

16 one during that 71-year period has raised any challenge to it.

17 That cross on the seal is displayed not by itself, albeit

18 prominently, but displayed along with 15 other clearly secular

19 symbols.

20        So that's what we know the reasonable observer would

21 see and he would know, and I submit that with that in mind, and

22 also in mind that the county has made no effort to specifically

23 point out to the public the presence of that cross on the seal,

24 with all that in mind, I think it's fair to conclude that the

25 reasonable observer would understand the purpose of that cross

34

1    on the seal in 2015 to be secular in nature.

2              THE COURT:  Okay.

3              MR. CAFFREY:  Thank you.

4              THE COURT:  Anything else, Counsel?

5              MR. SCHNEIDER:  Your Honor, if you have time, there

6    was a point I wanted to make.

7              THE COURT:  Sure.

8              MR. SCHNEIDER:  Not trying to get the last word, but

9    I --

10             THE COURT:  No, absolutely, sir.  This has all been

11   very helpful.

12             MR. SCHNEIDER:  I want to -- I guess I want to call

13   attention to a little bit of what I perceive to be a slightly

14   loose use of the word "history" here.  The idea that

15   Christianity has had a historic presence in the county, I

16   think, is something that can be discarded as obviously

17   unconstitutional.  There's been an acknowledgment that if this

18   seal were adopted today, it would be unconstitutional or the

19   argument would be much more difficult to overcome.  The County

20   could very easily adopt this seal today and point to the cross

21   as being an acknowledgment that Christianity had a historic

22   presence in the county.  That's an argument that could be made

23   today.

24             And so I don't think, to the extent that Christianity

25   has had a historic presence in the county, I don't think that

1   does anything to secularize the use of this cross because I

2   don't think the County would defend that today they could adopt

3   this seal and say, well, we were placing the cross here because

4   Christianity has had a historic presence in the county.  So

5   whether that was the intention in 1944 or that is the intention

6   now, I don't think that sort of history has a secularizing

7   effect and that that sort of history can allow for this display

8   to continue.

9           What I hear the argument being, fairly characterizing

10   it, is the history of this singular seal as a landmark of the

11   county, as some sort of historic landmark of the county.  And

12   that's why I would just go back to the argument that I made

13   earlier, that I'm having a hard time picking up anything more

14   than the passage of time being argued here, and I think placing

15   the courts in a position of saying sort of what's the magic

16   number for when an unconstitutional seal sort of is

17   grandfathered in I think is what the courts have tried to avoid

18   in recognizing that the passage of time alone is not

19   sufficient.  So I just wanted to distinguish between the

20   history of this seal as a singular seal as being an argument

21   that I think can fairly be made here, although I think the

22   courts have said that that argument alone doesn't suffice.

23           But that to the extent that there's an argument that

24   Christianity has some historic meaning in the county, I don't

25   think that's a secular meaning at all, and I don't think that

36

1   if there was an attempt to adopt a seal like this today, citing

2   a long-term presence of Christianity in the county, I don't

3   think that would be permissible.  And so I just wanted to

4   distinguish between those two types of history, Your Honor.

5           THE COURT:  Okay.  No, no, I appreciate that.  You

6   know, for some reason, I can't help but think about the analogy

7   to what is happening to the Civil War monuments in the South

8   right now, that as history has evolved, the figures that had

9   been revered for years and years and years suddenly, as a

10  result of the changing demographics, are now considered

11  anathema.  They're actually tearing down -- Robert E. Lee is

12  being torn down and Stonewall Jackson, and I believe -- I

13  forget the other one that was coming down.

14          And here, I can see where the commissioners would be

15  opposed to the idea that they have to change their seal after

16  all of these years simply because the world has changed, that

17  they want to hold on to that historic symbol and perhaps the

18  values that were much stronger then than they are today,

19  although some would argue those values are just as strong today

20  for those that are very religious, et cetera.  But it does seem

21  to have this whole evolving appreciation of just what the

22  Constitution means and what it doesn't mean and how far does it

23  go.

24          And I think this has been one of the areas where the

25  Supreme Court has stayed pretty much out.  It would be nice if

1  they would have been a little more in, but same with the Third

2  Circuit.

3              MR. SCHNEIDER:  And I think, Your Honor, that there

4  has consistently been a recognition by the courts that the

5  courts must tread carefully to not seemingly oppose religious

6  exercise in cases like this, which, you know, removal of a

7  cross after years may be perceived by -- I'm sure it would be

8  perceived by some in the community to be --

9              THE COURT:  Anti-religious.

10             MR. SCHNEIDER:  -- that sort of hostility towards

11 religion.  But I think what's important is that there are --

12 I'm sure there are more inclusive ways for the county to

13 recognize and commemorate the history of the county than to

14 have such a striking symbol that is -- as demonstrated by the

15 individual plaintiffs in this case, has a very significant,

16 alienating effect for members of the community today.  And I

17 think that there's a lot of room between having to change one

18 aspect of the seal and having the ability to commemorate the

19 history of the county be significantly offended.

20             And so I think that, you know, there is room to do

21 that, and there may well be room to honor the settlers of the

22 county in a way that doesn't use just a singularly religious

23 symbol to do that.  And so the hope would be that, you know, if

24 the County were to have to redesign this seal, there's plenty

25 of options to do that in a way that doesn't significantly

ACCESS TRANSCRIPTS, LLC          1-855-USE-ACCESS (873-2223)

38

1  frustrate the ability to honor the history of the county.

2          THE COURT:  Now, do you believe in 1944, based on

3  existing jurisprudence, the commissioners believed this was

4  constitutional when they designed this and adopted this seal?

5          MR. SCHNEIDER:  Well, Your Honor, I think that your

6  remarks about World War II at the time -- actually, one of the

7  plaintiffs made the same observation in her deposition.

8  Ms. Winkler said that she can relate to the fact that, at the

9  time, it may have sort of been a rallying symbol for the

10 country and the community.  But, you know, to her, that doesn't

11 change things today and what it means to her and how it makes

12 her feel in a county that still uses that symbol today.  And so

13 I think they would like to also think that the seal could be

14 adapted in a way that is more inclusive, you know, today.

15         THE COURT:  Okay.  Thank you very much, sir.

16         MR. SCHNEIDER:  Thank you.

17         THE COURT:  Mr. Caffrey, anything further?

18         MR. CAFFREY:  Just one last thing.

19         THE COURT:  Certainly.

20         MR. CAFFREY:  I think, Judge, the cases make it clear

21 that the First Amendment doesn't require the removal of all

22 traces of religion.

23         THE COURT:  Have you ever been down to the Supreme

24 Court chamber --

25         MR. CAFFREY:  Exactly.



1        THE COURT:  -- where they argue?  And all around the

2   top are religious symbols.

3        MR. CAFFREY:  Well, and again, the reference to "In

4   God We Trust" and "God save this honorable court," the

5   Constitution doesn't require all removal of traces and

6   references to God and religion.  Clearly, it doesn't.  So if,

7   as Mr. Schneider is suggesting, that the county's stated

8   purpose of honoring the original settlers of Lehigh County who

9   are Christian is still somewhat sectarian in nature -- and I'm

10  not conceding that, but to the effect that you assume it to be

11  true for purposes of argument -- that doesn't necessarily

12  invalidate our position and render the seal violative of the

13  First Amendment because the question again always comes down to

14  what is the purpose and effect.  What was the purpose of

15  refusing to remove that seal?  What is the effect on the

16  reasonable observer?

17        It's okay, just like in the nativity scene, that

18  there's a religious symbol there.  You cannot change the fact

19  that a nativity scene is religious in nature.  No matter what

20  you do, no matter what you put there, no matter what you say,

21  it's always going to be religious.  But it's how the reasonable

22  observer perceives the government purpose in putting that

23  display together.  It's how the purpose of the government, in

24  refusing to remove a display, is construed, all points that

25  we've covered in this argument.

1       THE COURT:  And there's no question that there is a

2  much more powerful appreciation of religion, in particular,

3  Christianity, in 1944 than there is today.

4       MR. CAFFREY:  Judge, first of all, we have the World

5  War II reference, which I think I valid.  Secondly, I mean,

6  let's be honest, the population in Lehigh County in 1944 was

7  probably overwhelmingly Christian.  No one batted an eye, I'm

8  sure, when a cross showed up on the county seal and one of the

9  county commissioners writes an article that says the purpose of

10  the cross is to honor Christianity.  Nobody batted an eye

11  because your neighbor was Christian, someone down the street

12  was probably Christian.  Not everyone, but let's face it, it

13  was probably overwhelmingly Christian.  The demographics of the

14  county have clearly changed since then, which is why the focus

15  should be on now.

16       THE COURT:  Even this idea of what the cross -- what

17  that symbol stands for -- if you go down to Arlington National

18  Cemetery and you see the crosses, now, you know that not

19  everybody under a cross was religious.  They obviously were

20  Christian or they would have the Star of David or some other

21  symbol there, but there are waves and waves and waves of

22  crosses, and interspersed with the Star of David.

23       What does that cross mean above their grave?  Does it

24  -- it means whatever it meant to them or whatever it means to

25  the observer, and the observer looks at it, we all know not all

41

1  are religious, but they're all identified.  And I guess there

2  is this hope that if there is a greater being and if there is a

3  greater place, that they've all gone to that greater place.

4  You know, what does the observer think?  Does he think this is

5  a Christian cemetery because we have all these Christian

6  crosses all over the field?

7          MR. CAFFREY:  Well, it would be interesting to know

8  who decides what's placed there.  Is it the government, which

9  has given permission for the soldier to be buried there, or is

10  it the family who makes the decision?  I don't know the answer

11  to that.

12          THE COURT:  I don't know.  And are there any other

13  symbols, other than the cross or the Star of David?  I don't

14  know that either.

15          MR. CAFFREY:  Not that I'm aware of.

16          MR. SCHNEIDER:  I'm not sure, Your Honor.

17          THE COURT:  That's an interesting issue that'll have

18  to be dealt with in other court or by another court.  Anything

19  further?

20          MR. CAFFREY:  No, Judge.

21          MR. SCHNEIDER:  I don't think so, Your Honor.

22          THE COURT:  Just as your written submissions were

23  outstanding, this argument was also very, very helpful.

24          MR. CAFFREY:  Thank you, Judge.

25          MR. SCHNEIDER:  Thank Your Honor.



42

1           THE COURT:  Thank you very much.  Have a great rest

2   of the day.

3           MR. SCHNEIDER:  Thank you.

4           MR. CAFFREY:  You, too.

5           THE CLERK:  All rise.

6       (Proceedings concluded at 10:33 a.m.)

7                       *  *  *  *  *

8

9

10

11

12

13

14             **C E R T I F I C A T I O N**

15

16           I, Alicia Jarrett, court-approved transcriber, hereby

17   certify that the foregoing is a correct transcript from the

18   official electronic sound recording of the proceedings in the

19   above-entitled matter.

20

21

22

23   _____

24   ALICIA JARRETT, AAERT NO. 428     DATE:  January 3, 2018

25   ACCESS TRANSCRIPTS, LLC

 ACCESS TRANSCRIPTS, LLC          1-855-USE-ACCESS (873-2223)